IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SANTIAGO TORRES BALLESTEROS                              PLAINTIFF

V.                              NO. 09-5198

MICHAEL J. ASTRUE,
Commissioner of Social Security Administration          DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Santiago Torres Ballesteros, brings this action pursuant to 42 U.S.C. §405(g),

seeking judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claims for a period of disability and disability insurance benefits

(DIB) under Title II of the Social Security Act (the Act) and Supplemental Security Income (SSI)

under Title XVI of the Act.  In this judicial review, the Court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. §405(g).

## Procedural Background

Plaintiff filed his applications for DIB and SSI on November 9, 2006,  alleging disability

since July 15, 2006.  (Tr. 25, 69-80).  Plaintiff's applications were denied initially and upon

reconsideration.  (Tr. 19-20, 37-43, 46-47).  Pursuant to Plaintiff's request, a hearing was held

before an Administrative Law Judge (ALJ) on July 1, 2008, where Plaintiff testified. (Tr. 4-18).

On March 27, 2009, the ALJ entered his decision, denying Plaintiff's request for a determination

of disability.  (Tr. 22-32).  The ALJ found that Plaintiff had the following severe impairments:

-1-

Essential Hypertension; Osteoarthritis; and a Disorder of the Foot. (Tr. 27). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments, and after careful consideration of the entire record, found that Plaintiff had the residual functional capacity (RFC) to perform a full range of light work, in that he could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, and could sit, stand and walk for six hours in an 8-hour workday.[1] (Tr. 28). The ALJ found that, considering the Plaintiff's age, education, work experience, and RFC, a finding of "not disabled" was directed by Medical-Vocational Rule 202.16. (Tr. 32). Plaintiff's request for review was denied by the Appeals Council on July 14, 2009, and the decision of the ALJ therefore became the final decision of the Commissioner. (Tr. 33-35).[2]

**Evidence Presented**

Plaintiff was born in Mexico in 1970, where he received five years of education. He came to the United States in 1985, "without papers." (Tr. 8). The illnesses that Plaintiff contends have limited his ability to work were his flat feet, pain in his legs, back pain, and his hands going numb. (Tr. 96). Plaintiff worked on an assembly line in a chicken plant from 1990 to 2001, on the production line at a wheel production company from 2003 to 2005, and did landscaping work at a golf course in 1990. (Tr. 117). Plaintiff was seen by doctors in Mexico in 2006, whose records appear in the transcript in Spanish. (Tr. 160-165, 181-182). Plaintiff

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. § 416.967(b).

[2] The Court notes that on July 14, 2009, the Appeals Council entered an order which stated that it was including a letter dated July 2, 2009, from Plaintiff's counsel as part of evidence. However, the Plaintiff's "letter" is dated June 1, 2009, and Plaintiff's counsel's letter is dated May 25, 2009.

AO72A
(Rev. 8/82)

also visited the  Northwest Arkansas Free Clinic (NWA Free Clinic) only two times - April 2, 2008 and May 14, 2008.  (Tr. 194-195).  At the request of the Social Security Administration, physical examinations were performed on Plaintiff by Randy Conover, D.O.; Dr. C.R. Magness; Dr. David Oberlander, a neurologist; and Dr. Alice M. Martinson, an orthopedist.  In addition, a Physical RFC Assessment was completed by Dr. Kimberly Adametz.  (Tr. 153-159, 168-175, 183-190, 198-206).

Plaintiff stated in an undated disability report that the plant where he was most recently working closed down and "they fired me but I was feeling really bad and can't find a new job." He reported that the only medications he was taking were calcium and vitamin injections.  He further reported that all of the doctors he had seen were in Mexico because he could not afford American doctors.  (Tr. 101).  However, the Court notes that he did go to the NWA Free Clinic on two occasions in 2008.  (Tr. 194-195).

Plaintiff reported that he was tired all day and was bothered by his back. (Tr. 107).  He stated that he could hardly stand for any length of time and that he only did a small amount of work at home, then rested, then did a little more.  (Tr. 109).  He stated that lifting was hard and that he had some problems with his hand.  In addition, walking hurt his feet and doctors told him that his back was crooked and his feet were flat.  (Tr. 114).  He stated that his head, back, feet and neck hurt all of the time and that his pain was constant and unbearable.  (Tr. 114-115).

Plaintiff stated that he had four daughters - two were "somewhere else," and two - ages five and one and a half - were living with him and his wife.  (Tr. 16). He stated that his wife was employed about three hours daily and during that time, he was with his two daughters, and had a brother who helped him.  (Tr. 16).

-3-

On December 22, 2006, at the request of the Social Security Administration, Randy Conover, D.O. conducted a general physical examination of Plaintiff, who, at that time, was taking only Tylenol. (Tr. 153-159). Dr. Conover found that Plaintiff's spine and extremities had normal range of motion; that Plaintiff was positive for Phalans(a diagnostic test for carpal tunnel syndrome) and negative for Tinels (a test to detect an irritated nerve); that Plaintiff could hold a pen and write; touch his fingertips to his palm; grip 95%; oppose his thumb to fingers; pick up a coin; stand and walk without assistive devices; walk on his heels and toes; and squat and arise from a squatting position. (Tr. 156-157). Dr. Conover found no decreasing joint space, no osteophytes and no increased subchondal sclerosis in his lumbar. (Tr. 158). Dr. Conover's diagnosis was: osteoarthritis, mild; CTS (carpal tunnel syndrome); flat feet; and HTN (hypertension). (Tr. 159). Dr. Conover found that Plaintiff could see, hear and speak, had the moderate ability to walk and stand, and mild ability to sit, lift, carry, handle, and finger, which might be hindered secondary to the above diagnosis. (Tr. 159).

On January 29, 2007, a Physical RFC Assessment was completed by a non-examining medical consultant, Kimberly Adametz. (Tr. 168-175). Dr. Adametz found that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of about 6 hours in an 8-hour workday; sit for a total of about 6 hours in an 8-hour workday; and push and/or pull in an unlimited fashion, other than as shown for lift and/or carry. (Tr. 169). She also found no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 170-172).

On July 13, 2007, at the request of the Social Security Administration, Dr. C.R. Magness performed a general physical examination of Plaintiff. (Tr. 183-190). Dr. Magness found that

-4-

with respect to his cervical spine, Plaintiff had 40 degree range of motion (normal range is 0 to 50 degrees), 50 degree extension (normal range is 0 to 60 degrees) and 70/70 degree rotation (normal range is 0 to 90 degrees). (Tr. 186). With respect to his lumbar spine, Plaintiff had 80 degree range of motion (normal range is 0 to 90 degrees). (Tr. 186). He found no muscle atrophy, paresthesia[3] in his right hand, with 85% grip in his right hand and 80% grip in his left hand. Dr. Magness diagnosed Plaintiff with "undiagnosed arthritis, myalgias," and cervical DJD.[4] In his Medical Assessment of Ability to Perform Work-Related Activities (physical), Dr. Magness found that Plaintiff could: frequently lift and or carry up to 10 pounds; occasionally lift and or carry 11 to 20 pounds; and never lift and/or carry 20 to 100 pounds. (Tr. 190). He further found that Plaintiff could: sit, stand and/or walk for 4 hours in an 8-hour workday; frequently do a simple grasp, fine manipulation, handle objects, feel objects, push/pull/operate controls with hands and feet; and could occasionally reach. He found that Plaintiff could: frequently balance and crouch; occasionally climb, stoop, kneel and crawl; and could be moderately exposed to heights, moving machinery, chemicals, noise, humidity, dust/fumes, temperature extremes, and vibrations. (Tr. 190). He also found that Plaintiff had limited hearing and speaking, but the Court is unable to read the notes to the side of this limitation.[5]

On April 2, 2008, Plaintiff visited the NWA Free Clinic, complaining of fatigue, back pain, and sleep problems. (Tr. 195). He stated he would get dizzy from standing for long

---

[3]Paresthesia - An abnormal touch sensation, such as burning, prickling, or formication, often in the absence of an external stimulus. Dorland's Illustrated Medical Dictionary 1404 (31st ed. 2007).

[4]The Court notes that some of the words in Dr. Magness' diagnosis were illegible.

[5]The Court notes that no other medical records indicate any limitations in Plaintiff's ability to hear and speak, except to the extent that Plaintiff does not write or speak English well. In fact, an interpreter was needed at the hearing.

periods of time, and also suffered from headaches, numbness in both hands, knee pain, and his feet hurt and became "hot - can't put on shoes." (Tr. 195). The doctor did not give an assessment and instead noted "fibromyalgia whatever that is." (Tr. 195). Plaintiff made a follow-up visit to the free clinic on May 14, 2008, and there was no reported improvement - Plaintiff complained of very bad back pain down his entire back, numbness in his arms and his feet felt "hot." (Tr. 194). There are no records to indicate Plaintiff returned to the free clinic for treatment.

At the hearing before the ALJ, Plaintiff stated that he rested a lot to make his pain better and that he had problems sleeping at night. (Tr. 12). He stated that he probably got five hours of sleep at night, that his hands would get really tired, that he could not feel his fingers some, and that there were little bits of time when he did not have pain. (Tr. 150). He also stated that he began having problems with depression about six or seven years ago, and still had a problem with that. (Tr. 16).

On September 16, 2008, x-rays of Plaintiff's lumbar and cervical spine revealed normal studies. (Tr. 207). Also on September 16, 2008, Dr. Alice Martinson, an orthopedist, prepared a Medical Source Statement of Ability to Do Work-Related Activities (physical). (Tr. 201-206). Dr. Martinson found that Plaintiff could continuously lift up to 10 pounds; frequently lift 10 to 20 pounds; occasionally lift 21 to 50 pounds, and never lift 51 to 100 pounds. She further found that Plaintiff could continuously carry up to 10 pounds and frequently carry 11 to 20 pounds; occasionally carry 21 to 50 pounds and never carry 51 to 100 pounds. (Tr. 201). Dr. Martinson found that Plaintiff could sit 1 hour, stand 1 hour, and walk 1 hour at one time without interruption; could sit 8 hours, stand 8 hours, and walk 8 hours in an 8 hour work day; and that

AO72A
(Rev. 8/82)

Plaintiff did not require the use of a cane to ambulate. (Tr. 202). She also found that
Plaintiff could continuously reach overhead and do all other, handle, finger, feel and push/pull
with both hands. (Tr. 203). She found that Plaintiff could frequently operate foot controls with
both feet. Dr. Martinson also found that Plaintiff could continuously climb stairs and ramps,
climb ladders or scaffolds, balance, stoop, kneel, crouch, and crawl. (Tr. 204). She found no
hearing or vision impairments. She also found that Plaintiff could frequently tolerate exposure
to unprotected heights, moving mechanical parts, operation of a motor vehicle, humidity and
wetness, dust, odors, fumes and pulmonary irritants, extreme cold and heat, vibrations and loud
noise. (Tr. 205).

In her evaluation dated September 17, 2008, Dr. Martinson noted that Plaintiff was not
on any current medications. (Tr. 199). Dr. Martinson concluded, after an in length discussion
of her examination of Plaintiff, that despite a thorough musculo-skeletal and neurologic
examination, "this man has no objective signs of physical abnormalities today." (Tr. 199). She
stated that it was possible that he had some sort of "constitutional condition" to account for his
symptoms. (Tr. 200). Dr. Martinson stated that after ten years, she would have expected some
kind of abnormal physical finding, and he had none. (Tr. 200). In the absence of objective signs
of physical abnormality, Dr. Martinson stated that she had nothing upon which to base any
recommendations for work limitations, and nothing upon which to base any sort of an
impairment rating. (Tr. 200).

On December 19, 2008, at the request of the Social Security Administration, Dr. David
Oberlander, a neurologist of Conway Neurology, examined Plaintiff, whose chief complaint was
chronic pain. (Tr. 209). Plaintiff was not then taking any medications. (Tr. 209). Dr.

AO72A
(Rev. 8/82)

Oberlander found that Plaintiff had normal finger to nose and heel to shin testing and  revealed a normal gait. (Tr. 210).  He also found that Plaintiff's complaints and findings were consistent with a history of what appeared to be carpal tunnel syndrome in both hands with some sharp hand pain with numbness at night and while using his hands. (Tr. 210).  No focal weakness or atrophy in the hands was found, and Plaintiff's fine motor skills were "quite normal." (Tr. 210). Dr. Oberlander further found that Plaintiff's gait and station and neurological examination also appeared to be intact.  He stated that they may be dealing with a "small fiber neuropathy which can produce pain in the legs and feet with preserved examination findings and even with a normal EMG study."  He found that this condition, however, did not impact Plaintiff's motor function, gait or fine motor skills; all of which were quite normal.  (Tr. 210).

In his Medical Sources Statement of Ability to do Work-Related Activities (physical) dated December 19, 2008, Dr. Oberlander found that Plaintiff could: continuously lift up to 10 to 20 pounds, and occasionally lift 21 to 100 pounds;  continuously carry up to 10 pounds and 11 to 20 pounds, and frequently carry 21 to 50 pounds and 51 to 100 pounds;   sit 4 hours at one time without interruption, stand 8 hours without interruption, and walk 8 hours without interruption; sit, stand, and walk 8 hours total in an 8 hour workday;  continuously reach, handle, finger, feel, and push/pull with both hands;  continuously operate foot controls with both feet; climb stairs and ramps, ladders or scaffolds, balance, stoop, kneel, crouch, and crawl continuously; and that there were no hearing or vision impairments.  He also found that Plaintiff could tolerate continuous exposure to unprotected heights, moving mechanical parts, operation of a motor vehicle, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme cold, extreme heat, vibrations, and very loud noise. (Tr. 212-217).  He found that plaintiff had

-8-

mild carpal tunnel syndrome, which could improve or worsen**.**

**Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A plaintiff must show that his disability, not simply his impairment, has lasted for

-9-

at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and, (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**Discussion**

The ALJ found that Plaintiff's carpal tunnel syndrome and depression were non-severe. In so finding, the ALJ stated that Plaintiff's carpal tunnel syndrome did not have more than a minimal effect on his physical or mental ability to do basic work activities. It is the Plaintiff's burden to establish that his impairment or combination of impairments are severe. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). However, this standard has been held to be a "de minimis standard." Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cir. 1989). Dr. Conover found that Plaintiff could hold a pen and write, touch his fingertips to his palm, grip 95%, oppose his thumb to his fingers, pick up a coin, and had mild ability to lift, carry, handle, and finger, although it might be hindered, secondary to the diagnosis. Dr. Kimberly Adametz found no postural or manipulative limitations. Dr. Magness found that Plaintiff had 85% grip in his right

-10-

hand and 80% grip in his left hand, that Plaintiff could frequently grasp, handle objects and fine manipulation, feel objects, push/pull/operate controls with his hands and feet, and could occasionally reach.  Dr. Martinson found that Plaintiff could continuously reach overhead and handle, finger, feel and push/pull with both hands, and that Plaintiff had a full range of motion of his shoulders, elbows, wrists, and all of the small joints of the digits of both hands.  Dr. Martinson also found that sensation was normal throughout both upper extremities and that the Phalen's test was negative in both hands at 30 seconds.  She also found that the Tinel's test was negative over both median nerves at the wrists and both ulnar nerves at the elbows.  She found no atrophy and that grip strength measured with a Jamar dynamometer was 50 on each of three attempts in both upper extremities.  Dr. Oberlander found Plaintiff had normal finger to nose and heel to shin testing, and although Plaintiff's complaints were consistent with carpal tunnel syndrome in both hands, there was no focal weakness or atrophy in his hands and his fine motor skills were quite normal.  Although Dr. Oberlander stated that they may be dealing with a small fiber neuropathy which could produce pain in his legs and feet, the condition did not impact his motor function, gait or fine motor skills, all of which were normal.  Dr. Oberlander found that Plaintiff had mild carpal tunnel syndrome, but that he could continuously reach, handle, finger, feel and push/pull with both hands. There is no indication in the medical records that Plaintiff's carpal tunnel syndrome had any more than a minimal effect on Plaintiff's ability to function, and no physicians placed any limitations on Plaintiff's ability to function in the workplace.

Furthermore, with respect to Plaintiff's depression, the ALJ correctly noted that the record reflected no actual treatment for his depression and concluded that it was non-severe.  As urged by Defendant, Plaintiff did not allege depression to be a disabling condition in the initial

-11-

disability report he completed, and Plaintiff's attorney did not list depression among the disabling impairments in her pre-hearing memorandum, nor did she indicate Plaintiff had any mental limitations.  (Tr. 96, 145-146).  See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001)("The fact that she [Plaintiff] did not allege depression in her application for disability benefits is significant, even if the evidence of depression was later developed").  Additionally, there was no objective evidence to substantiate a diagnosis of depression or functional limitations associated with depression.  See Marolf v Sullivan, 981 F.2d 976, 978 (8th Cir. 1992)(stating that proof of a disabling impairment must be supported by at least some medical evidence).  The Court finds that there is substantial evidence to support the ALJ's findings that Plaintiff's carpal tunnel syndrome and depression are non-severe.

As to the remaining impairments which were found to be severe by the ALJ, the ALJ first found that the medical records were not indicative of the specific clinical signs and diagnostic findings pertaining to osteoarthritis, hypertension, and disorder of the foot, required to meet or equal the requirements set forth in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix I, Listings 1.00(b), 4.00(H) and 1.00(G), respectively.  The Court has reviewed the relevant listings and, based upon the medical records contained in the transcript, finds that there is substantial evidence to support the ALJ's findings in this regard.

The ALJ next determined that Plaintiff had the RFC to perform the full range of light work.  Although the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000), it has also been held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Some medical evidence must support the

-12-

determination of the Plaintiff's RFC and the ALJ should obtain medical evidence that addresses the Plaintiff's "ability to function in the workplace." Nevland v. Apfel, 204 f.3d 853, 858 (8th Cir. 2000).

The only physicians in the present case that could be considered Plaintiff's "treating physicians" are the doctors from Mexico, and those doctors who saw Plaintiff at the NWA Free Clinic on two occasions. Although the records from the Mexican doctors are in Spanish, the ALJ stated that they opined that the Plaintiff should stay off his feet. The doctors at NWA Free Clinic gave a preliminary diagnosis of "fibromyalgia whatever that is." The ALJ found that Plaintiff had no long-term relationship with a treating physician, and concluded that the medical opinions in the case, provided by consultative examiners who examined the Plaintiff once, at the request of the Social Security Administration, should be given more weight. The Court agrees.

Subsequent to Plaintiff's visits in 2006 to the Mexican doctors, Plaintiff was seen by four physicians, two of which were specialists - one an orthopedist and the other a neurologist. Without repeating their findings here, suffice it to say that none of them indicated that Plaintiff would be limited in his ability to do work to the extent that Plaintiff alleges. As stated by the ALJ, the opinions of these examining physicians are consistent with each other in that they limit the Plaintiff to no less than a full range of light work. The ALJ determined that Dr. Martinson's opinion, which was even less limiting, was less persuasive, as it contrasted sharply with the other evidence of the other consultative examiners.

In addition, contrary to Plaintiff's assertions, the ALJ clearly considered Plaintiff's allegations of pain. Pain is considered disabling when it is not "remediable and precludes a claimant from engaging in any form of substantial gainful activity." Johnston v. Shalala, 42 F.3d

-13-

448, 451 (8th Cir. 1994), quoting <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1186 (8th Cir. 1989). The ALJ

may discredit subjective complaints of pain if there are inconsistencies in the evidence as a

whole. <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th cir. 1984)(subsequent history omitted). The

factors the ALJ should consider when determining if Plaintiff's complaints of pain are credible

include:

> the absence of any objective medical basis that supports the severity of the subjective
> complaints;
> Plaintiff's daily activities;
> the duration, frequency and intensity of Plaintiff's pain;
> precipitating and aggravating factors;
> the dosage, effectiveness and side effects of medication; and
> functional restrictions.

<u>Id.</u> at 1322.

In the present case, the ALJ discussed Plaintiff's allegations of pain in detail. He noted

that Plaintiff testified that he had pain for about 10 years, but continued to work with the pain

because he felt he had to work.   The ALJ noted that at both of his previous jobs, he performed

heavy exertional level work and only stopped working when the plant closed in mid 2006. The

ALJ also noted that following the closing of the plant, Plaintiff collected unemployment benefits

through the end of 2006, which the ALJ found diminished the credibility of Plaintiff's statement

that he was unable to work after July 15, 2006.

With respect to Plaintiff's daily activities, the ALJ noted that Plaintiff laid on the couch

or in bed, but sometimes went outside or to the grocery store with his wife.  Plaintiff also

indicated that he watched his five year old and one and a half year old, along with the help of his

brother, while his wife was at work three hours a day.  Plaintiff had not required hospitalization

or surgery for his pain, and no objective tests showed conditions that would cause disabling pain,

-14-

and Plaintiff never received ongoing aggressive treatment for pain or persistently took strong pain medication.  See Cassidy v. Barnhart, 464 F. Supp. 2d 864, 870 (E.D. Mo. 2006).  Plaintiff also stated that the plant where he was working "closed down and they fired me" but he was "feeling really bad and can't find a new job."

Infrequent doctor visits can indicate that Plaintiff's complaints are not credible.  Id. Plaintiff's position that the reason he did not seek more medical treatment in the United States because he could not afford it is not persuasive, especially since the records indicate that he visited the NWA Free Clinic on two occasions.   As Defendant argues, the absence of further records from this clinic suggests that Plaintiff did not return for treatment.

Finally, Plaintiff's counsel states that, "[w]ith proper treatment and medication, he may again become a valuable member of the workforce."  (Doc. # 11 at p.18).  Impairments that are controllable with treatment are not disabling.  See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007).

The Court finds there is substantial evidence to support the ALJ's finding that Plaintiff had the RFC to perform the full range of light work and that Plaintiff's allegations of pain were not credible to the extent they were inconsistent with the RFC assessment.  The RFC assessed by the ALJ is supported by the opinions of the Plaintiff's examining physicians - Dr. Conover, Dr. Magness, Dr. Oberlander and Dr. Martinson.

The Court also finds that the ALJ appropriately relied upon the Grids in this case to conclude that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform.  Once Plaintiff has established a prima facie case by showing an inability to perform past relevant work, the burden of proof shifts to the commissioner to show that

AO72A
(Rev. 8/82)

Plaintiff has the RFC to perform some other kind of work and that jobs are available in the national economy which realistically fit his capabilities.  Reed v. Sullivan, 988 F.2d 812, 815 (8th Cir. 1993).  If the Plaintiff is found to have only exertional impairments (affecting the ability to perform physical labor), the Commissioner may meet this burden by referring to the Grids which are fact-based generalizations about the availability of jobs for people of varying ages, educational background, and previous work experience, with differing degrees of exertional impairment.  See 20 C.F.R. Part 404, Subpart P, Appendix 2;  Foreman v. Callahan, 122 F.3d 24, 26 (8th Cir. 1997);  Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992)(citations omitted). Consequently, if the Plaintiff is found to have nonexertional type impairments which diminish his capacity to perform the full range of jobs listed in the Grids, the Commissioner must solicit testimony from a vocational expert to establish that there are jobs in the national economy the Plaintiff can perform.  Robinson, 956 F.2d at 841; Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cri. 2001)(citations omitted).

"[A]n ALJ may use the Guidelines even thought there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the Plaintiff's RFC to perform the full range of activities listed in the Guidelines." Thompson v. Astrue, No. 06-1081, 2007 WL 601596 *3 (8th Cir. 2007), quoting Lucy v. Chater, 113 F.3d 905, 908 (8th Cir. 1997).

Since the Court finds substantial evidence to support the ALJ's finding that Plaintiff's non-exertional impairment (pain) did not diminish Plaintiff's RFC to perform the full range of activities listed in the Guidelines, it was appropriate for the ALJ to apply the Grids.  In addition, the ALJ applied Medical-Vocational Rule 202.16, which applies to a younger individual who is

-16-

illiterate or unable to communicate in English, such as Plaintiff, which supports the ALJ's

findings. Accordingly, the Court finds there is substantial evidence to support the ALJ's finding

that Plaintiff has the RFC to perform the full range of light work, considering his age, education

and work experience, and that Plaintiff is therefore not disabled, as directed by Medical-

Vocational Rule 202.16.

**Conclusion**

Based upon the foregoing, the Court finds that there is substantial evidence to support

the ALJ's finding that Plaintiff is not disabled.

DATED this 1st day of November, 2010.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)